**FILED**
**Mar 11, 2019**
**01:59 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| TRACY WAUGAMAN, | ) | |
| Employee, | ) | Docket No. 2018-06-1225 |
| | ) | |
| v. | ) | |
| | ) | |
| WESTROCK SERVICES, INC., | ) | State File No. 50236-2018 |
| | ) | |
| Employer, | ) | |
| | ) | |
| and | ) | Judge Joshua Davis Baker |
| ACE AMERICAN INSURANCE CO., | ) | |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER

The Court convened an expedited hearing on February 28, 2019, to consider whether WestRock must provide Ms. Waugaman treatment for an alleged left-arm injury. WestRock argued it has no duty to provide treatment because Dr. Hazlewood determined her left-arm injury is not related to her work. For the reasons below, the Court holds WestRock must provide Ms. Waugaman treatment with Dr. Thomas A. Kowal.

### Claim History

WestRock provided authorized treatment for Ms. Waugaman's work-related, right-elbow injury, but this dispute arose when she alleged a left-arm injury while receiving treatment from a physiatrist for her right elbow. Concerning her accepted claim, she selected Dr. Kowal from a panel but ultimately came under the care of Dr. Lucas Richie, an orthopedic surgeon, who operated on her right elbow. He released her with a four-percent permanent impairment rating and several workplace restrictions. However, Ms. Waugaman's elbow pain continued, so Dr. Richie referred her to Dr. Jeffrey Hazlewood, a physiatrist.

Ms. Waugaman returned to work at WestRock while receiving treatment from Dr. Hazlewood. On January 23, 2018, she reported complaints of left-arm pain to Carolyn Moody, the safety coordinator. Ms. Waugaman's written report read, "My left arm got sore when I was working on G-7 of [sic] Friday Jan. 19." The completed report noted the following incident description: "Tracey has [sic] went to Carolyn on 1/23/18 complaining about her left arm hurting. This is the first time I heard anything about her arm when she is on G7. She always volunteers to go over there when I need someone."

According to Ms. Waugaman, Ms. Moody offered her a panel of physicians for her left-arm complaints, and she selected Dr. Kowal but never received an appointment.[1] In the meantime Ms. Waugaman continued to see Dr. Hazlewood for her right elbow.

Despite first experiencing pain in late January, Ms. Waugaman did not tell Dr. Hazlewood about her left-arm injury until March 22. When asked why she waited so long to tell him, Ms. Waugaman said she feared she would be fired, and she also expected to receive treatment for her left arm from the doctor she chose from the panel.

Dr. Hazlewood recorded that Ms. Waugamn first presented the left-arm injury to him as a gradually-occurring, over-compensation injury, though her account of this differed. The medical note from the March 22 visit reads: "This pain developed gradually, and I believe she told me that it started 11/19/2018, but I need to confirm this [at the] next visit. She feels that it was due to compensation effects from the right . . . She denies any specific injury." Ms. Waugaman said she told Dr. Hazlewood she felt a "sharp pain" that "shot from her shoulder down to her hand."[2] She further stated she didn't know if she suffered an overcompensation injury; she only knew her left arm hurt "from working, that's all I know."

At first, Dr. Hazlewood determined Ms. Waugaman's left-arm injury resulted from her work at WestRock despite some apprehension concerning the medical history she provided. He suspected she had torn her rotator cuff and prescribed physical therapy. He also recommended an MRI which she never received. However, after reviewing a video that purported to show her work activities, Dr. Hazlewood revised his opinion and stated that the work could not have caused the left-arm injury.[3]

Ms. Waugaman disputed the video's usefulness because it showed work on a machine that did not require overhead work, unlike the machine on which she was injured. She said that when the pallets of boxes were stacked high, she had to reach overhead to grab them before feeding them into the machine. Ms. Waugaman told this to

---

[1] The physician panel is not part of the record.

[2] She also stated she told the same thing to Ms. Moody.

[3] The videos are not part of the record.

Dr. Hazlewood, but he declined to alter his opinion. He stated in the medical notes: "I must go more by what they give me than what she says, I would assume, and I don't know what else to do in this case. At this point, I will state based on the information I have[,] it is not work related if she does have a tear."

Ms. Waugaman continues to work for WestRock. She continues to experience pain from her left shoulder that radiates down her left arm and causes numbness. She also describes a "knot" in the area just below her left shoulder.

### Findings of Fact and Conclusions of Law

Ms. Waugaman seeks treatment for her left-arm injury. To receive treatment she must establish she would likely prevail at a hearing on the merits in proving her entitlement to medical benefits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018). The Court holds Ms. Waugaman carried this burden and orders WestRock to provide her treatment with Dr. Kowal.

WestRock presented three defenses for its failure to provide Ms. Waugaman treatment: (1) her sore left arm did not meet the definition of an injury under the law; (2) it had no duty to provide a panel, as the condition resulted from overcompensation from her previous right elbow injury; and/or (3) Ms. Waugaman failed to rebut Dr. Hazlewood's adverse causation opinion. The Court rejects these defenses.

With respect to the first defense, the Court holds that Ms. Waugaman would likely succeed at a hearing on the merits in proving she suffered an "injury by accident caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment . . . [that] is identifiable by time and place of occurrence." *Id*. at § 50-6-102(14). Ms. Waugaman testified she told Ms. Moody she felt a sharp pain that went from her elbow down to her hand. The accident report she completed indicated she had soreness in her arm after working the G7 machine on January 19. The Court holds this was sufficient evidence under the expedited-hearing standard that she reported an injury.

When Ms. Waugaman reported her injury, the Court finds that triggered WestRock's duty to provide a panel of physicians: "[u]pon notice of any workplace injury, other than a minor injury for which no person could reasonably believe requires treatment from a physician, the employer shall immediately provide the injured employee a panel of physicians that meets the statutory requirements for treatment of the injury." Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2015)[4]; s*ee also*, Tenn. Code Ann. § 50-6-

---

[4] This rule has since been repealed. The current rule which went into effect after Ms. Waugaman's date of injury states in pertinent part:

Following receipt of notice of a workplace injury and the employee expressing a need for

204(a)(3)(A). Ms. Waugaman testified she received a panel and chose Dr. Kowal but received no further communication from WestRock about seeing the doctor despite making several inquiries. Although neither side presented the panel, the Court finds her testimony credible. Further, it was unrefuted, as WestRock called no witnesses.

With respect to WestRock's second defense—that it owed Ms. Waugaman no treatment other than that provided by Dr. Hazlewood because her left-arm injury resulted from overcompensation—the Court finds it lacks a sufficient factual basis. While true that a compensable overcompensation injury must be the natural consequence of another compensable injury, there is no proof aside from a brief mention in a medical note that her left-arm condition resulted from, or was a natural consequence of, her right-elbow injury. Further, at an expedited hearing, an employee need not establish medical causation by a preponderance of the evidence. *See Lewis v. Molly Maid,* 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *8-9 (Apr. 20, 2016). Rather, if the employee comes forward with evidence showing that a work event resulted in injury, it may be sufficient to support an order compelling an employer to provide a panel. *Id.* Thus, the Court holds that WestRock must provide Ms. Waugaman treatment with Dr. Kowal whom she selected from the panel.

WestRock lastly argues that Dr. Hazlewood's opinion on causation is presumed correct, as he was an authorized treating physician. *See* Tenn. Code Ann. § 50-6-102(14)(E) (Providing that the causation opinion of a treating physician "selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3)" shall be presumed correct.). The Court disagrees. While he treated Ms. Waugaman's right-elbow injury for pain after release by her orthopedic surgeon, she never selected him from a panel. In fact, the Court agrees with Ms. Waugaman that WestRock usurped her privilege of selecting the treating physician for her left arm by directing her to Dr. Hazlewood for treatment. *See Employers Ins. of Wassau v. Carter*, 522, S.W.2d 174, 176 (Tenn. 1975) ("Referring the employee to a single physician does not comply with the statute; it is usurpation of the privilege of the employee to choose the ultimate treating physician.").

Furthermore, the Court finds Dr. Hazlewood's causation opinion suspect. Ms. Waugaman testified the video he reviewed when changing his causation opinion provided an inaccurate representation of her work. Additionally, the Court finds it troubling that Dr. Hazlewood would by default agree with the information provided by WestRock rather than that from Ms. Waugaman concerning her job duties. He stated, "I must go more by what they give me than what she says, I would assume, and I don't know what

medical care, an employer shall, as soon as practicable but no later than three (3) business days after receipt of such request, provide the employee a panel of physicians as prescribed in T.C.A. § 50-6-204.

4

else to do in this case. At this point, I will state based on the information I have[,] it is not work related if she does have a tear."

Finally, Dr. Hazlewood's statement concerning the greater weight he gave to WestRock's information also revealed he has not determined what is wrong with Ms. Waugaman's arm; he merely suspects a torn rotator cuff. The Court holds the more appropriate course of action would have been to send her to a doctor more qualified to make that determination after proper testing.

It is **ORDERED** as follows:

1. WestRock shall provide Ms. Waugaman treatment for her left arm injury with Dr. Thomas A. Kowal.

2. This matter is set for a status conference on **Monday, April 29, 2019, at 9:30 a.m. (CDT). You must call 615-741-2113 to participate in the Hearing. Failure to call may result in a determination of issues without your participation.**

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov

**ENTERED MARCH 11, 2019.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

APPENDIX

Exhibits:

1. Medical Records
2. Ms. Waugaman's affidavit
3. Final Medical Report
4. Employer's Incident Investigation Report

Technical Record:

1. Request for Hearing
2. Dispute Certification Notice
3. Petition for Benefit Determination
4. Employer's Prehearing Brief
5. Employer's Exhibit List
6. Employee's Exhibit List
7. Employee's Response to Employer/Insurer's Prehearing Brief
8. Employer's Reply in Further Opposition to Employee's Request for Additional Medical Treatment
9. Employee's Supplemental Notice and Response to Employer's Prehearing Brief

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on March 11, 2019.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Stephan D. Karr, Employee's Attorney | | | X | steve@flexerlaw.com |
| Chancey R. Miller, Employer's Attorney | | | X | cmiller@carrallison.com |

_____

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

Judge_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐  Temporary disability benefits
☐  Medical benefits for current injury
☐  Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____   SF#: _____   DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*Attach an additional sheet for each additional Appellee*

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20___

[Signature of appellant or attorney for appellant]  _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $_____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe:_____ |

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)           RDA 11082